UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

6500 Cherrywood Lane
Greenbelt, Maryland 20770
Telephone: (301) 344-3593

February 23, 2021

LETTER TO COUNSEL:

  RE: *Bruce P. v. Andrew M. Saul, Commissioner of Social Security*
    Civil No. TJS-19-3433

Dear Counsel:

  On December 2, 2019, Plaintiff Bruce P. petitioned this Court to review the Social Security Administration's final decision to deny his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). ECF No. 1. The parties have filed cross-motions for summary judgment. ECF Nos. 16 & 19. These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[1] Having considered the submissions of the parties, I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will grant the Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

  In his applications for DIB and SSI, Bruce P. alleged a disability onset date of September 14, 2016. Tr. 16. His applications were denied initially and upon reconsideration. *Id.* Bruce P. requested an administrative hearing and a hearing was held on December 20, 2018, before an Administrative Law Judge ("ALJ"). Tr. 33-51. In a written decision dated January 4, 2019, the ALJ found that Bruce P. was not disabled under the Social Security Act. Tr. 16-27. The Appeals Council denied Bruce P.'s request for review, making the ALJ's decision the final, reviewable decision of the agency. Tr. 1-6.

  The ALJ evaluated Bruce P.'s claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Bruce P. had not engaged in substantial gainful activity since the alleged onset date, September 14, 2016. Tr. 18. At step two, the ALJ found that Bruce P. suffered from the following severe impairments: varicose veins, obesity, diabetes mellitus, neuropathy, and history of right wrist fracture. *Id.* At step three, the ALJ found Bruce P.'s impairments, separately and in combination, failed to meet or equal in severity any listed impairment as set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart

---

[1] This case was originally assigned to Judge Deborah L. Boardman. On January 7, 2021, it was reassigned to me.

P, App. 1 ("Listings"). Tr. 20-22. The ALJ determined that Bruce P. retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can lift and carry 50 pounds occasionally and less than 25 pounds frequently. The Claimant can stand and walk for 6 hours in an eight-hour day and sit for 6 hours in an 8-hour day.

Tr. 22.

At step four, relying on testimony provided by a vocational expert ("VE"), the ALJ determined that Bruce P. was capable of performing past relevant work as a van driver and forklift operator. Tr. 26. Accordingly, the ALJ found that Bruce P. was not disabled under the Social Security Act. Tr. 26-27.

Bruce P. argues that the ALJ made a number of errors that warrant remand, which the Court summarizes as follows: (1) the ALJ substituted his judgment for Bruce P.'s treating providers; (2) the ALJ failed to articulate a function-by-function analysis before determining the RFC; (3) the ALJ failed to consider Bruce P.'s ability to perform work for an entire workday and workweek; (4) the ALJ made inconsistent statements in the opinion regarding Bruce P.'s RFC; (5) the ALJ failed to consider Bruce P.'s mood disorder as a severe impairment; (6) the ALJ failed to consider whether Bruce P.'s use of a cane was medically necessary; and (7) the ALJ improperly found at step four that Bruce P. could perform past relevant work. None of these arguments have merit.

Bruce P.'s first argument is that the ALJ "effectively substituted his own judgment for uncontroverted medical evidence." ECF No. 16-1 at 8. He argues that the ALJ "utterly disregarded the physical and mental limitations of the treating providers . . . in support of his own non-medical conclusions." *Id.* He accuses the ALJ of "playing doctor." *Id.* An ALJ may not substitute his own lay opinion for the opinion of a medical expert when evaluating the significance of clinical findings. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 108-09 (4th Cir. 2020). "In Social Security disability cases, the 'treating physician rule' is well-established." *Id.* at 106. Under the regulations, an ALJ must "give more weight to medical opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)). An ALJ must give "controlling weight" to the opinion of a treating physician regarding the nature and severity of an impairment if "that opinion is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with the other substantial evidence in the record." *Id.* (internal quotation marks omitted). An ALJ is permitted to give little or no weight to the opinion of a treating physician if there is persuasive contrary evidence, *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992), but the ALJ must discuss any contrary evidence with specificity so that a reviewing court can conduct a meaningful review. *Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016). Even if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, the ALJ must still "determine the appropriate weight to be accorded to the opinion by considering 'all of . . . the factors' listed in the regulation, which include the

length of the treatment relationship, consistency of the opinion with the record, and the physician's specialization." *Id.* (quoting 20 C.F.R.. § 404.1527(c)).

The ALJ properly evaluated the opinions of Bruce P.'s treating physicians. The ALJ explained that the November 2012 opinion of George Carter, C.R.N.P. was "unpersuasive."[2] Tr. 25. The ALJ explained that Mr. Carter's restrictive opinion from 2012 (that Bruce P. was unable to be on his feet for 6 hours a day, unable to frequently lift 10 pounds and occasionally lift 20 pounds, unable to stay on task more than 80 percent of the day, and unable to perform simple job duties) was at odds with Bruce P.'s proven record of performing heavy work until 2016. Tr. 25. In addition, the ALJ cited treatment records from 2018 that "the claimant had monofilament testing and normal sensation in both feet" and "normal strength and movement of all extremities" with normal gait and station, and no difficulty with ambulation. *Id.* Because Mr. Carter's opinion was inconsistent with Bruce P.'s work activities subsequent to 2012 and inconsistent with the results of clinical examinations, the ALJ's evaluation of Mr. Carter's opinion as "unpersuasive" was warranted.

The same goes for the ALJ's consideration of the October 2018 opinion of K. El-Bedawi, M.D. Dr. El-Bedawi stated that Bruce P. could not be on his feet for six hours per eight-hour workday, that he had significant restrictions in his ability to stoop, bend, climb, and crouch, and that he would miss 30 days of work per year due to his symptoms. Tr. 25. The ALJ noted that this restrictive opinion was not consistent with objective medical evidence. For instance, in May 2018, imaging showed only mild osteoarthritis in Bruce P.'s knee. *Id.* And in July and September 2018, treatment notes indicated that Bruce P.s' "gait and station were normal and that his knee pain had improved." Tr. 26. Regarding Bruce P.'s right wrist, the ALJ stated that "imaging showed that the claimant had a non-united fracture of the right wrist" and that it was "noteworthy" that Bruce P. had been able to "perform work at the heavy exertional level for several decades, with no indication of any functional limitations" and no record of any additional trauma that would have exacerbated his wrist injury. *Id.* The ALJ acknowledged that Bruce P. had occasional issues of numbness in his feet but also recognized that "these symptoms are only episodic in nature." *Id.* The ALJ recounted normal findings from treatment records in May and June 2018. *Id.* The ALJ explained that while a decrease of Bruce P.'s exertional level from heavy to medium was appropriate, "the objective evidence does not support the finding that the claimant's limitations" require greater restrictions than that. *Id.* The ALJ's consideration of Dr. El-Bedawi's opinion complied with the governing legal standards and it is supported by substantial evidence.

Bruce P.'s second argument is that the ALJ erred by failing to "articulate a function-by-function analysis of physical RFC." ECF No. 16-1 at 9. An ALJ must consider all of a claimant's "physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019) (internal quotation marks and citation omitted). In

---

[2] Bruce P. filed his applications for DIB and SSI on May 15, 2017, which allowed the ALJ to consider the opinion of a nurse practitioner as an acceptable medical source. *See Norris v. Saul*, No. 5:18-CV-02815-JMC, 2020 WL 205305, at *4 (D.S.C. Jan. 14, 2020) ("The regulations were revised effective October 15, 2018 such that nurse practitioners will be considered acceptable medical sources for claims filed on or after March 27, 2017.") (citing 20 C.F.R. § 416.902).

doing so, the ALJ must provide "a narrative discussion describing how the evidence supports each conclusion . . . ." SSR 96-8P, 1996 WL 374184 at *7 (July 2, 1996). Once the ALJ has completed this function-by-function analysis, the ALJ can make a finding as to the claimant's RFC. *Id.*; *Thomas*, 916 F.3d at 311 ("Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion.").

Here, the ALJ's analysis of the medical evidence is detailed, clear, and well-supported by citations to the record. Rather than recount the ALJ's entire RFC analysis, the Court will consider each of Bruce P.'s objections. Bruce P. argues that "the ALJ never discussed how [the claimant] would be able to stand with evidence indicating the severity of his varicose veins." ECF No. 16-1 at 10. The ALJ acknowledged that Bruce P.'s varicose veins constituted a severe impairment and discussed the evidence in the record regarding the condition. Tr. 18, 24. In his summary of the relevant medical records, the ALJ noted that Bruce P. denied experiencing any pain from the varicose vein condition in May 2018 and reported only one episode of bleeding several months prior to the visit. Tr. 24. In June 2018, examination revealed edema on his right lower leg with an asymptomatic left lower leg. *Id.* Bruce P. underwent radiofrequency ablation of the right great saphenous vein in August 2018. *Id.* In September 2018, treatment records documented that he had minimal pain following the ablation and that he had experienced no further hemorrhage from the varicose veins in his right lower leg. *Id.* Records indicate Bruce P. was "pleased with his post op result." Tr. 336. Bruce P.'s vascular surgeon recommended that he wear compression stockings and elevate his legs at night, but did not recommend any further vascular intervention. Tr. 24.

The ALJ explained that Bruce P.'s varicose veins (combined with his other impairments, both severe and non-severe) required that he be limited to performing "less than the full range of work at the medium exertion level." Tr. 26. The ALJ specifically mentioned Bruce P.'s varicose vein condition when he discussed why the State agency medical consultants' assessments were only partially persuasive. Tr. 25. The ALJ explained that, contrary to these assessments, Bruce P.'s varicose veins were a severe impairment, and that it was necessary to restrict him to work at the medium exertional level. *Id.* Contrary to Bruce P.'s argument, the ALJ "buil[t] an accurate and logical bridge between the medical evidence of record and his conclusion." ECF No. 16-1 at 11. Because the ALJ adequately explained his RFC finding such that this Court can meaningfully conduct its review, Bruce P.'s second argument is without merit. Bruce P. may disagree with the ALJ's conclusions, but it is not the function of this Court to reweigh the evidence. *See, e.g.*, *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

Bruce P.'s third argument is that the ALJ failed to account for his "ability to perform the relevant functions 8 hours a day, for 5 days a week." ECF No. 16-1 at 12. Inasmuch as this argument relies on the opinions of Mr. Carter and Dr. El-Bedawi, it is unpersuasive. As explained above, the ALJ properly discounted the opinions of these providers because they were not consistent with objective medical evidence and with Bruce P.'s work activity up to 2016.

Bruce P.'s fourth argument is that the ALJ's "inconsistent statements" frustrate the Court's ability to review the RFC finding. ECF No. 16-1 at 13. This argument is without merit because the statements that Bruce P. believes are "inconsistent" are not actually inconsistent. First, the ALJ found the State agency consultants' assessments only "partially persuasive" because, as the ALJ explained, they were not sufficiently restrictive to account for all of Bruce P.'s limitations.

4

Whereas the State agency consultants opined that Bruce P. does not have severe impairments, the ALJ found that he does have severe impairments and as a result he can only perform work at the medium exertional level. Tr. 25. Bruce P. also notes that the ALJ stated that he was capable only of performing less than a full range of medium work. At the same time, he notes, the ALJ's RFC appears to mirror the requirements of a full range of medium work. Any error by the ALJ in characterizing the RFC as amounting to less than the full range of medium work (as opposed to simply medium work) is harmless. The ALJ consistently expressed that Bruce P. is restricted in his ability to work only in that he is limited to lifting and carrying 50 pounds occasionally and less than 25 pounds frequently, that he can only stand and walk for six hours in an eight-hour day, and that he could only sit for six hours in an eight-hour day. Any error by the ALJ in characterizing this range of work as "less than the full range of work at the medium" exertional level instead of "medium work" is not a basis for remand.[3]

Bruce P.'s fifth argument is that the ALJ improperly failed to categorize his mood disorder as a severe impairment. ECF No. 16-1 at 14. An impairment is considered "severe" if it significantly limits the claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1522, 416.922. The claimant bears the burden of proving that an impairment is severe. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "[M]ere diagnosis says nothing about the severity of [a] condition." *Corcoran v. Astrue*, No. SKG-08-0913, 2009 WL 3100350, at *15 (D. Md. Sept. 22, 2009). Nonetheless, in the Fourth Circuit, establishing that an impairment is severe is not a difficult hurdle to overcome. "'[A]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).

The ALJ explained why he found that Bruce P.'s mood disorder is not a severe impairment. Tr. 19. The ALJ noted that treatment records from November 2016 indicated that his "mood and affect were normal, his recent and remote memory were normal and his judgment was good." Tr. 19. Records from December 2016 revealed that Bruce P. "denied having any mental health concerns." And September 2018 treatment notes "showed that claimant was active and alert, his mood was good, he was oriented to time, place and person and his judgment was good." *Id.* The ALJ went on to consider the four broad areas of mental functioning and found that Bruce P. had no limitations in any of the areas. Tr. 20. In finding that Bruce P.'s mood disorder was not a severe impairment, the ALJ complied with the governing legal standards. His decision is supported by substantial evidence. Bruce P.'s argument is without merit.

---

[3] Bruce P. also states that "the ALJ noted that [the claimant] performed heavy work until 2016." ECF No. 16-1 at 13-14. He argues that this is "especially troublesome since the ALJ concluded without any analysis that [the claimant] could perform his past relevant work at the medium exertional level." *Id.* The Court rejects this argument because it is not clear what error Bruce P. complains of. Without a more specific argument about what error Bruce P. believes the ALJ committed, the Court is unable to consider whether the argument has merit. Contrary to Bruce P.'s statement that this is "clear error," it is unclear to the Court what error he is even asserting.

Bruce P.'s sixth argument is that the ALJ failed to consider whether his use of a cane was necessary. ECF No. 16-1 at 15. During the administrative hearing, Bruce P. stated that he brought a cane to the hearing because he had been prescribed a cane "about two years" prior to help him keep his balance. Tr. 38. He testified that he used the cane chiefly because of the swelling and nerve damage he experienced in his feet. *Id.* The record, however, does not indicate that Bruce P. was ever prescribed a cane or that a medical provider recommended that he use a cane.[4] Moreover, as the ALJ noted, multiple treatment notes over time indicate that Bruce P.'s gait and station were normal and that he had no difficulty with ambulation. Tr. 19, 22, 24. The ALJ also noted that the numbness in Bruce P.'s feet was merely "episodic in nature," and that physical examinations conducted in May and June 2018 yielded normal findings. Tr. 26. The ALJ adequately considered Bruce P.'s limitations. Bruce P. has not shown that any greater restrictions than those set forth in the RFC determination (such as the use of a cane) are warranted given the evidence of record. Bruce P.'s argument is without merit.

Bruce P.'s seventh argument is that the ALJ erred at step four by finding that he could perform his past relevant work. ECF No. 16-1 at 17-19. During the hearing, a VE testified that a hypothetical individual with Bruce P.'s RFC could perform his past relevant work as a van driver and forklift operator as those jobs are generally performed at the medium exertional level. Tr. 50. The VE also testified that Bruce P. actually performed his past work at the heavy exertional level. Tr. 40-41. "[U]nder the fourth step of the disability inquiry, a claimant will be found 'not disabled' if he is capable of performing his past relevant work either as he performed it in the past or as it is generally required by employers in the national economy." *Pass v. Chater*, 65 F.3d 1200, 1207 (4th Cir. 1995) (citing SSR 82–61; *Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir.1990) ("The two tests [in SSR 82–61] are clearly meant to be disjunctive. If the claimant is found to satisfy either test, then a finding of not disabled is appropriate.")); *see also Matthews v. Colvin*, No. 1:10CV371, 2014 WL 459834, at *4 (M.D.N.C. Feb. 5, 2014) ("Thus, in undertaking the evaluation at step four, the ALJ may consider whether the plaintiff can perform her past relevant work as she actually performed it, or whether the plaintiff can perform her past relevant work as generally performed in the national economy."). Here, the ALJ properly relied on the VE's testimony that work as a van driver and forklift operator is generally performed at the medium exertional level. Because an individual with Bruce P.'s RFC would be capable of performing such work, the ALJ properly found that Bruce P. was capable of performing his past relevant work as it is generally performed.

---

[4] SSR 96-9p provides:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9p, 1996 WL 374185, at *7; *see also Sanford v. Saul*, No. 5:18-CV-2886-KDW, 2020 WL 633743, at *11 (D.S.C. Feb. 11, 2020) ("Because there is no evidence showing that the cane is medically required or law requiring an ALJ to consider the impact of a non-required device, the ALJ did not err in failing to discuss the medical necessity of a cane or include any cane-related limitation in his RFC assessment.") (internal quotation marks omitted).

      For the reasons set forth herein, Bruce P.'s Motion for Summary Judgment (ECF No. 16) will be **DENIED**, and the Commissioner's Motion for Summary Judgment (ECF No. 19) will be **GRANTED**. The Clerk is directed to **CLOSE** this case. Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                                        Sincerely yours,

                                        _____/s/_____

                                        Timothy J. Sullivan
                                        United States Magistrate Judge